UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN A. DIAZ, individually and on behalf of others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) CHAPTERS HEALTH SYSTEM. INC., ) ) Defendant. ) | **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

1. After *personally* warning Defendant that it was violating the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(g), Defendant ignored Plaintiff's admonition and continued to knowingly or recklessly violate the law by providing Plaintiff and putative class members with electronically printed receipts bearing ten of the sixteen digits comprising their credit card numbers.

2. The FCRA, at 15 U.S.C. § 1681c(g), unequivocally states that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

3. Moreover, the Eleventh Circuit recently declared that "printing more than five digits of a credit card number in willful violation of FACTA causes the person whose account number is disclosed to suffer a concrete injury." *Muransky v. Godiva Chocolatier, Inc*., 905 F.3d 1200, 1210 (11th Cir. 2018).

1

4. Consequently, Plaintiff and the putative class members, all of whom conducted business with Defendant during the time frame relevant to this complaint, and paid for goods using a credit or debit card, have been harmed by Defendant's conduct and are entitled to an award of statutory damages.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce ..."), and 15 U.S.C. § 1681p (An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, ...").

6. Venue is proper in this judicial district because Defendant engaged in the complained of collection activities in this district. 28 U.S.C. § 1391(b) ("A civil action may be brought in— (1) A civil action may be brought in—a judicial district in which any defendant resides, ...").

## PARTIES

7. Plaintiff John A. Diaz ("Plaintiff") is a natural person who resides in Hillsborough County, Florida.

8. Defendant, Chapters Health System, Inc. ("Defendant") is a Florida not-for-profit corporation whose principal address is 12470 Telecom Drive, Suite 300 West, Temple Terrace, FL 33637, and whose registered agent for service of process in the state

of Florida is Andrew K. Molosky, 12470 Telecom Drive, Suite 300 West, Temple Terrace, FL 33637.

9. Defendant is a multi-site healthcare provider. With annual total revenue in excess of $150 million dollars and net assets of more than $160 million dollars, Defendant is one of the largest not-for-profit hospice providers in the nation. Defendant also owns and operates several facilities which provide ancillary services, such as a staffing agency, pharmacy services, and a chain of thrift stores located in Hillsborough and Polk Counties that operates under the fictitious name "Life's Treasures."

## FACTUAL ALLEGATIONS

### Background of FACTA

10. In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

11. One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

12. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> **"Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."**

(the "Receipt Provision").

13. After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

14. The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained:

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . .. The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . .."  [1]

Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

15. These processing companies have required that credit card expiration dates not be shown since 2003 and still require it. For example, according to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

---

[1] Source: http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (Last accessed: Dec. 12, 2018).

*See*, Exhibit A.

    16.    American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B.

    17.    Similarly, MasterCard requires in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C.

    18.    In *Muransky, supra*, the Eleventh Circuit concluded that unlawful disclosure of one's credit card information on a transaction receipt was akin to several common law torts, including breach of confidence and breach of an implied bailment, both of which satisfy *Spokeo's* rule that acts bearing a "close relationship" to conduct actionable at common law can satisfy Article III.

    19.    In addition, the burden of having to take the trouble to keep and safely dispose of the receipt, to prevent further disclosure of the information on it, is an "additional harm" incurred as a result of the breach of one's duty to mask a customer's

information.

### **Plaintiff's Factual Allegations**

20. On September 6, 2018, Plaintiff purchased several miscellaneous items from Defendant's Carrollwood location at 4802 Gunn Highway, Tampa, Florida.

21. Plaintiff paid for the subject goods using his personal Mastercard credit card, at which time he was presented with an electronically printed receipt bearing the first six and the last four digits of his credit card number.

22. On September 7, 2018, Plaintiff returned to Defendant's Carrollwood location and purchased some books and other miscellaneous items.

23. Again, Plaintiff paid for the subject goods using his personal Mastercard credit card, at which time he was presented with an electronically printed receipt bearing the first six and the last four digits of his credit card number.

24. On October 4, 2018, Plaintiff returned to Defendant's Carrollwood location and purchased more books and miscellaneous items.

25. Plaintiff paid for this purchase using his personal Visa credit card, at which time he was presented with an electronically printed receipt bearing the first six and the last four digits of his credit card number.

26. On October 15, 2018, after becoming aware of FACTA through a FOX13 television segment, Plaintiff decided to look though his old receipts to see if he had any that displayed too many digits of his credit card number.

27. After looking through numerous receipts, Plaintiff discovered that all three of the recent receipts from Defendant violated the FACTA truncation requirement.

28. On October 16, 2018, Plaintiff returned to Defendant's Carrollwood location to inform the manager, Brad, of the news segment he had seen the night before and to caution Brad that Defendant appeared to be violating FACTA by failing to properly truncate credit card numbers.[2]

29. Brad, apparently unconcerned after learning of the FACTA truncation requirement, informed Plaintiff the cash registers did not belong to Defendant, so they weren't responsible.

30. On November 2, 2018, Plaintiff, as he often does, returned to Defendant's Carrollwood location to make some additional purchases.

31. This time, Plaintiff paid for the subject goods using his personal Discover credit card, at which time—to his surprise—he was presented with an electronically printed receipt bearing the first six and the last four digits of his credit card number.

32. By printing of the first six and last four digits of his credit card account number(s) Defendant not only placed him at risk for identity theft, Defendant breached Plaintiff's confidence. Additionally, Defendant's mishandling of his information also breached an implied bailment to the extent that receipt, has a duty to return it without displaying "more than the last 5 digits of the card number."

**Defendant's Prior Knowledge of FACTA**

33. Most merchants in the business community readily brought their credit card and debit card receipt printing process into compliance with FACTA by

---

[2] At various times in 2016-2017, Plaintiff volunteered at the Carrollwood Life's Treasures and became acquainted with Brad. Plaintiff's goal at that time was to notify Brad and Defendant of the issue with receipt, so that they might investigate FACTA on their own and fix the problem.

programming their card machines and devices to comply with the truncation requirement. Defendant could have easily done the same.

34. Defendant was specifically informed of the requirements of FACTA *by this Plaintiff*, and paid no heed to the warning.

35. Not only was Defendant informed it could not print the expiration date of credit cards, it was contractually prohibited from doing so. Defendant accepts credit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

**Defendant's Misdeeds**

36. At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

37. At all times relevant herein, the conduct of Defendant, as well as that of its agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

38. It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

39. Consistent with Defendant's policy and procedure, Defendant knowingly and intentionally includes the first six and the last four digits of the credit card number on its electronically printed receipts.

40. The digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

41. Notwithstanding the fact that it has had years to comply—and was specifically warned—Defendant continues to issue point of sale receipts containing ten of the sixteen digits that comprise a credit card number, in direct violation of the Receipt Provision of the FCRA.

42. Notwithstanding the Receipt Provision, Defendants continue to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which to not comply with the FCRA.

43. To paraphrase the words of Judge Posner in *Redman v. RadioShack Corp.*, Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at *2.

## CLASS ACTION ALLEGATIONS

44. This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

> (i) All persons in the United States (ii) who, within the two (2) years prior to the filing of the complaint, made a payment pursuant to a purchase made at a Defendant-owned establishment (iii) using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than more than the last 5 digits of the card number or the expiration date of the credit or debit card.

45. Plaintiff falls within the class definition and is a member of the class. Excluded from the class is Defendant and any entities in which Defendant has a

controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

### Certification Under Either Rule 23(b)(2) or (b)(3) is Proper

46. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

47. Defendant operates multiple facilities in Florida where it accepts debit and credit cards and, upon information and belief, prints receipts reflective of credit card transactions. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

48. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

49. This suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek

recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

50. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

   a. Whether, within the two years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which the expiration date of the credit card was printed;

   b. Whether Defendant's conduct was willful and reckless;

   c. Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

   d. Whether Defendant should be enjoined from engaging in such conduct in the future.

51. As a person who patronized Defendant's facilities and received a receipt upon which ten digits of his of his credit card number was printed, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

52. The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully or

knowingly provided such electronically printed receipts, despite firsthand knowledge of the unlawful nature of such policy.

53. Plaintiff and the members of the class have all suffered harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the class, along with countless future patrons of Defendant's many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will (as it has already shown) continue such illegal conduct. Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

54. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

55. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

56. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

**COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)**

56. 15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

57. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

58. Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

59. On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

60. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

61. Despite having knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

62. As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff John A. Diaz respectfully requests that this Court enter judgment in his favor and the class, and against Defendant Chapters Health System, Inc., for:

a. Statutory damages;

b. Punitive damages;

c. Injunctive relief;

d. Attorneys' fees, litigation expenses and costs of suit, and

e. Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

**Plaintiff demands a trial by jury on all counts.**

Dated: December 19, 2018

Respectfully submitted,

By: */s James S. Giardina*
James S. Giardina
Fla. Bar No. 0942421
The Consumer Rights Law Group, PLLC
3104 W. Waters Avenue, Suite 200
Tampa, Florida  33614-2877
Tel: (813) 435-5055 ext. 101
Fax: (866) 535-7199
James@ConsumerRightsLawGroup.com