# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOHN A. DIAZ,

      Plaintiff,

v.                              CASE No. 18-cv-03052-CEH-SPF

CHAPTERS HEALTH SYSTEM, INC.,

      Defendant.

_____/

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD

Plaintiff, John A. Diaz ("Plaintiff"), by and through undersigned counsel, pursuant and according to the Court's Order Certifying Settlement Class, Granting Preliminary Approval of Settlement, and Directing Notice to the Class, [ECF No. 35], and Amended Order Certifying Settlement Class, Granting Preliminary Approval of Settlement, and Directing Notice to the Class, [ECF No. 65], hereby submits the present Motion For Final Approval of Class Action Settlement, Award of Attorneys' Fees, Expenses, and Service Award, and sates as follows:

## I. INTRODUCTION

Plaintiff, John A. Diaz, individually and as representative of the Settlement Class, submits this motion and memorandum in support of final approval of the class action settlement with Defendant, Chapters Health System, Inc. ("Defendant"), as to the claims asserted under the Fair and Accurate Credit Transaction Act ("FACTA"), which the Court preliminarily approved

on January 6, 2020, and amended on April 1, 2020. [ECF Nos. 35, 65]. A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.[1]

The Agreement provides Defendant will pay $1,274,562.00, to establish a Settlement Fund. Class members were sent court-approved notice inviting them to submit a claim for a portion of the fund. *See Appendix 2* (Declaration of Claims Administrator) at ¶¶ 2-4, 8. Approximately 748 people who were sent notice of the settlement have submitted timely valid claims, approximately 3.39 of the Class. The claim rate here is consistent with the rate in many other consumer statutory damage cases that have been granted final approval,[2] and thus a strong endorsement of the settlement by the class. *See generally, In re Toys R Us-Delaware, Inc.— Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 n. 134 (C.D. Cal. 2014) (noting that a three percent claim filing rate is appropriate).

The Court set June 22, 2020 as the date to submit exclusions and file objections. [ECF No. 65]. Out of approximately 22,065 class members, none objected. *Appendix 2* (Declaration of Claims Administrator) at ¶¶ 2, 10. Also, only one class member has requested exclusion. *Appendix 2* at ¶ 9. Finally, the required CAFA notices were properly served. *See* Weiss Decl., [ECF No. 79-1]. Such an extraordinarily "low percentage of objections points to the

---

[1] The Agreement attached as *Appendix 1* does not include exhibits. The Agreement with exhibits was previously filed at ECF No. 26-1.

[2] *See, e.g., Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, No. 12-cv-780 (N.D. Ill) (1.97% of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, No. 13- cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*, No. 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, No. 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, No. 10-cv-349 (M.D. La.) (.07% of the class made claims).

reasonableness of a proposed settlement and supports its approval." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).

As shown below, this settlement clearly meets the standards for final approval. In granting preliminary approval, the Court preliminarily found the Agreement was within the range of reasonableness, and thus that the class should be given notice. [ECF Nos. 35, 65]. Nothing has changed to alter that finding. To the contrary, the class's reaction to the settlement has indicated strong support for the Agreement.

The Agreement is the result of arm's-length negotiations between Defendant and experienced Class Counsel, and was only reached after engaging in discovery, motion practice, and a mediation with Jay M. Cohen, an experienced and respected mediator. As a result, the Agreement is presumptively fair, reasonable, and adequate. *In re Sturm, Ruger & Co., Inc.*, No. 09-cv-1293, 2012 U.S. Dist. LEXIS 116930, at *12 (D. Conn. Aug. 20, 2012) ("[T]he settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.").

Likewise, although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the parties. *See Greco v. Ginn Dev. Co.*, 2015 U.S. App. LEXIS 20867, at *9 (11th Cir. Dec. 2, 2015) (unpub.) ("[A] district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'") (citation omitted) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also, Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D.

Fla. 1988) *aff'd*, 893 F.2d 347 (11th Cir. 1989) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."). Ultimately, a class action settlement should be approved if it is fair, reasonable and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). As shown below, this settlement clearly merits final approval.

## II.   SUMMARY OF THE LITIGATION, MEDIATION, AND SETTLEMENT

FACTA "is aimed at protecting consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). The inclusion of excess account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("[T]he less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information."). In signing FACTA into law, President Bush likewise remarked, "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), *subsequently rev'd on other grounds*, 444 F. App'x 370 (11th Cir. 2011), citing 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. *See* Federal Trade Commission, *Identity Theft Survey Report* (2003).[3] Every year, identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy, and as of 2018, a Harris Poll revealed that nearly 60 million Americans have been affected by identity theft.[4] Furthermore, the costs of financial fraud, identity theft, and even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014,* at 1 (Sept. 2015).

To help address this problem, Congress decided *inter alia* to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," to prohibit the printing of credit and debit card expiration dates on point-of-sale receipts, and to thereby "limit the number of

---

[3] In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

[4] Source: https://www.lifelock.com/learn-identity-theft-resources-how-common-is-identity-theft.html (Last viewed: June 4, 2020). In addition, according to a 2018 FTC report, Florida ranks No. 4 for identity theft among the 50 states, with 37,797 complaints. *See* https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf (last viewed: July 10, 2020); *see also* https://www.idtheftcenter.org/florida-named-top-state-for-identity-theft-and-fraud/ (last viewed: July 10, 2020).

opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

Moreover, to encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages, costs, and attorneys' fees for any "willful" violation of the law. *See Harris, Inc.*, 564 F.3d at 1306-07 (citing 15 U.S.C. § 1681n(a)(l)(A), and (2)). Consistent with this intent, Plaintiff brought this lawsuit to resolve Defendant's alleged systematic violation of FACTA's prohibition against printing anything more than the last five digits of credit or debit card account numbers, or the credit and debit card expiration dates, on transaction receipts issued at its retail stores in the United States. [ECF Nos. 1, 58].

Plaintiff alleged that he was one of a nationwide class of consumers who made point of sale purchases at Defendant's store and received a printed receipt that displayed the first six and last four digits of the credit card or debit card number. Plaintiff asserted claims for willful violations of FACTA. *Id.* Defendant answered the Complaint and denied Plaintiff's claims of liability and damages. [ECF No. 15].

This contentious litigation has included extensive conferral regarding the nature and accessibility of Defendant's electronically stored information, discovery, discovery motions and a court-ordered mediation. *See, e.g.*, [ECF Nos. 21, 56]. The settlement negotiations began at a court-ordered mediation and continued for several months. Despite their significant

differences, the parties have been able settle this action on behalf of a nationwide Settlement Class comprised of (i) all persons in the United States (ii) who, within the two (2) years prior to the filing of the Complaint, made a payment pursuant to a purchase made at a Defendant-owned establishment (iii) using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than the last 5 digits of card number or the expiration date of the credit or debit card. The parties determined that customers in approximately 70,809 transactions meet this Settlement Class definition. A copy of the settlement agreement is attached as *Appendix 1*.

On January 6, 2020 the Court granted the settlement preliminary approval, and directed that notice be sent to the class members. [ECF No. 35].

## III.    SETTLEMENT TERMS

The Agreement provides that Defendant shall pay $1,274,562.00. *Appendix 1*, at § III.B. Pursuant to the terms of the Agreement, a Settlement Class Member who properly and timely made a claim will receive a pro rata share of the Settlement Fund, in an amount up to $18.00. In addition to the payments to class members, Defendant also agreed to the following:

### A.    Notice and Settlement Administration.

The costs of the Notice Plan, including the cost of setting up and maintaining a settlement website to give class members additional information about the settlement and a convenient means to submit a claim, as well as the cost of postage for mailing the notice and settlement payments to class members, shall be paid from the Settlement Fund, provided that there are sufficient funds in the Settlement Fund to distribute $18.00 to each class member who makes a valid claim. In the event there are not sufficient funds in the Settlement Fund to distribute

$18.00 to each class member making a valid claim after payment of fees to class counsel and service award to Plaintiff, Defendant will be responsible for paying the fees of the Notice Plan above any amounts available in the Settlement Fund. In addition, Defendant has agreed to change its business practices to ensure that it is no longer providing transaction receipts to customers that disclose any credit or debit card information in violation of FACTA. *See Appendix 1* at § III.F. The final notice and administration costs are estimated to be $69,975.00. *Appendix 2* at ¶ 11.

**B.  Release.**

In exchange for the above relief, the release is limited to claims related to or arising out of the claims which were made or could have been made in this Litigation. *Appendix 1* at § VI.

**IV.  THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT**

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *Id.* at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009), *abrogated on other*

*grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2012) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007).

The plan approved by the Court here provided exceptional notice that exceeds Rule 23 and due process requirements. In granting preliminary approval to the notice plan, this Court found: "The Court has considered the proposed forms of notice including the Summary Notice and Long Form Notice for the Settlement Website, (attached as Exhibit 2 and 3 to the Settlement Agreement) and Settlement Claim Form (attached as Exhibit 4 to the Settlement Agreement), and finds that the forms, content, and manner of notice proposed by the parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the constitutional requirements of notice." [ECF No. 35, ¶ 5]. These conclusions remain correct as evidenced by the strong claim rate.

The Claims Administrator followed the Court-approved notice and claims procedures. It sent direct mail notice to every identified class member for which an address was provided and email notice to every class member whose email address was provided.[5] *Appendix 2* at ¶¶ 2-4, 8. It also set up the settlement website as well as the toll-free number for class members to call with any questions or request that a claim form and long form notice be mailed to them. *Appendix 2* at ¶¶ 5-6.

As of July 10, 2020, the website has been visited 2,030 times, with 5,402 page views. *Appendix 2*, at ¶ 5. As of July 10, 2020, the Claims Administrator's toll-free Voice Response Unit has handled a total of 549 phone calls from persons seeking information about the case. *Appendix 2* at ¶ 6. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required.

Class members had until June 22, 2020, to request exclusion, object, or submit a claim. [ECF No. 65]. As noted above, approximately 748 claims have been filed, only one class member has requested exclusion, and no class members have objected. *Appendix 2* at ¶¶ 7,9-10. No governmental entity objected in response to the CAFA notice. In short, the notice complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms, how to obtain additional information and how to exercise their rights. By all accounts, the notice plan was not just adequate; it was a success.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

---

[5] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[W]here a fully descriptive notice is sent first- class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.").

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Warren*, 693 F. Supp. at 1054 ("[S]ettlements are highly favored in the law."). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some deference should be given to the consensual decision of the parties. *See Warren*, 693 F.Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation"). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986.

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1329. In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arms–length and informed

bargaining." *Lipuma*, 406 F. Supp. 2d at 1315; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.").

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

**A. The Agreement Is the Result of Arm's Length Negotiations Between the Parties with the Assistance of an Experienced Mediator.**

The context in which the Agreement was reached confirms that it was the result of arms-length and informed negotiations among the parties, and not collusion.

To start, the Agreement only came about after the discovery, conferrals, and motion practice discussed above. The work put into the case gave experienced counsel ample information about the case facts and the chance of success, to enable them to evaluate the terms of any proposed agreement, and thus ensure a fair compromise. *See Appendix 3,* Owens Decl., ¶ 18. Even then, the parties conducted an in-person mediation session by a highly experienced neutral, Jay M. Cohen. This further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to

the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1340 (finding no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

As such, it is clear the Agreement is the result of arms-length and informed negotiation between the parties, not collusion, and thus the Court should not hesitate to grant it final approval.

**B.** **The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of granting final approval.

1. The Likelihood of Success at Trial.

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843, at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiff's and the class members' ultimate success is far from guaranteed. Class Counsel is confident in the strength of the claims alleged. Nevertheless, litigation is inherently unpredictable and the outcome of a trial is unpredictable. Further, it is the opinion of Plaintiff's counsel that organizations engaged in the operation of hospice facilities do not make for good defendants before a jury, irrespective of the merits of the present claim.

Indeed, Plaintiff and the class members face significant risks in proceeding, including the possibility that class certification may be denied, the case may be defeated at the summary judgment stage, and of course the possibility that the jury concludes that Defendant's alleged violation of FACTA was not willful. Defendant is represented by competent and formidable trial counsel.

Also, some courts view awards of aggregate, statutory damages with skepticism and would reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). This argument, if raised, and if ultimately accepted, could considerably affect the class's potential recovery.[6]

---

[6] *But see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Additionally, Plaintiff's success at trial is far from certain. Defendant has not previously been sued for violating FACTA, which could impact the jury's finding as to whether Defendant's violations were willful. Further, given Defendant's not-for-profit status and its contributions to Chapters' hospice programs, Plaintiff runs the risk of Defendant being seen as a sympathetic defendant—an additional factor that could influence a jury's decision. *See Lowery v. City of Albuquerque*, CIV 09-0457 JB/WDS, 2013 WL 1010384, at *37 (D.N.M. 2013) (noting that the popularity of some of the class action defendant's practices put the potential damages award in doubt). Finally, Plaintiff recognizes the expense, duration, and complexity of continued litigation would be substantial and possibly require further briefing on numerous substantive issues, extensive trial preparation, and appeal. *See Appendix 3*, Owens Decl. at ¶ 14; *Appendix 4*, Giardina Decl. at ¶ 34.

Against the inherent uncertainty raised by these issues is the substantial and concrete cash relief the class members will receive under the Agreement. Plaintiff expected no significant opposition to it by the class and in fact, Plaintiff was correct. Weighing the strengths of the claims against the legal and factual obstacles, and the complexity of class action practice, there is no doubt that this settlement is in the class members' best interests.[7] As such, the first *Bennett* factor weighs in favor of approving it.

2. <u>Range of Possible Recovery and the Point at Which the Agreement Is Fair Reasonable and Adequate.</u>

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined.

---

[7] *See Appendix 3*, Owens Decl. at ¶ 19; *Appendix 4*, Giardina Decl. at ¶ 28.

*In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007) (quoting *Lipuma*, 406 F. Supp.2d at 1322). However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326. "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 542 (S.D. Fla. 1988), *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990).

Here, the monetary relief secured on behalf of the class is substantial. Each class member who submitted a valid claim will receive up to $18.00 in cash. This is plainly fair, reasonable and adequate, as the relief here compares favorably with the potential per-class-member benefit conferred in other FACTA class settlements that received final approval. *See, e.g.*, *Katz v. ABP Corp.*, No. 12-cv-04173, 2014 U.S. Dist. LEXIS 141223, at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-987, 2012 U.S. Dist. LEXIS 364 at, **14-15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, No. 3:07-0788, 2008 U.S. Dist. LEXIS 117126, at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Rests.*, No. 07-317, 2008 U.S. Dist. LEXIS 33087, at *9-10 (W.D. Pa. Apr. 22, 2008) (FACTA class

settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.*, No. 07-cv-00443 (W.D. Pa. May 5, 2007) (a class of 400,000 members could claim a $5 voucher).[8] In addition to the monetary and non-monetary benefits to the class members, consumer class actions such as the instant one are inherently beneficial to society in general, in that they act as a deterrent to unlawful behavior.[9]

Accordingly, the settlement exceeds the range of what is fair, reasonable and adequate. The second and third *Bennett* factors are met.

### 3. The Complexity and Expense of Further Litigation.

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381 (quoting *Behrens*,

---

[8] Although FACTA provides a potential recovery of $100 to $1,000 *if* the violation is willful, this does not take into consideration the risk of losing on the merits, the risk of losing a due process challenge to the aggregate statutory damages award or the risk of losing class certification. Factoring in these risks necessitates a discounted recovery.

[9] *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 286 (6th Cir. 2016) ("Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small)." (citations omitted)).

118 F.R.D. at 543).

This factor favors approval of the Agreement because the expense and complexity of further litigation would be substantial. Further litigation would include a contested motion for class certification, potential cross motions for summary judgment, potential interlocutory appeals, additional pretrial motion practice, preparing the final pretrial order, conducting the final pretrial conference, and conducting a trial. Given the stakes, an appeal is likely regardless of which party wins. Moreover, continued litigation delays the case's resolution, imposes additional substantial expense on both sides, and consumes substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of remaining litigation favors the approval of the Agreement.

4. <u>Substance and Amount of Opposition to Agreement.</u>

The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, out of about 22,065 class members, none have filed an objection, and only one sought exclusion. *Appendix 2* at ¶¶ 2, 9. These facts, combined with a typical claim rate by the rest of the class, shows that this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No.

91-cv-986, 2006 U.S. Dist. LEXIS 88347, at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (fact that more than "99.9% of class members have neither opted out nor filed objections is strong circumstantial evidence in favor of the settlement"), *aff'd.*, 267 F.3d 743 (7th Cir. 2001)); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement,' so that the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.") (citation omitted).

5. Stage of Proceedings at Which Settlement was Achieved.

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383; *see also Access Now, Inc.*, 2002 U.S. Dist. LEXIS 28975, at *21 ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof. This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.").

Here, the Agreement was not reached until after written discovery, document review, and an in-person mediation before a professional neutral. Class Counsel ensured they had sufficient

information about the allegations of the complaint, the class size, and the range of the class's potential damages. Hence, there should be no question that, by the time the Agreement was reached, Class Counsel had enough information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. In sum, the *Bennett* factors weigh in favor of final approval.

## VI. THE ATTORNEYS' FEES AND EXPENSES AND INCENTIVE PAYMENT REQUESTED ARE REASONABLE

In the Eleventh Circuit, "It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d at 1358 (citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The reasonableness of the fee sought is confirmed by examining it both as a percentage of the total settlement, as well as the various factors established for evaluating attorney fee requests (including the "Johnson" or "Camden I" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A. The Fee Amount is Reasonable as a Percentage of the Total Settlement.

"In the Eleventh Circuit, 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Hamilton v. SunTrust Mortg., Inc.*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762, at *20-21 (S.D. Fla. Oct. 24, 2014) (quoting *Camden I Condo*, 946 F.2d at 774). Also, "federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases."

*Hamilton*, 2014 U.S. Dist. LEXIS 154762, at *21 (collecting cases); *see also Camden I*, 946 F.2d at 774-75 ("an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed award of 33.3%); s*ee, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, at *29 (S.D. Fla. Nov. 5, 2015) (discussing the range of reasonableness for fee requests).[10]

The fee and expense award here easily falls within the range of reasonableness. The mailed notice, long form notice, and website all specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested, which are "not to exceed one third of the fund, which is $424,854." *Appendix 1* at *Exhibits A, B*. The notice also advised that counsel would seek reimbursement of their expenses, and here Class Counsel seeks $6,119.69 in out-of-pocket expenses incurred in prosecuting this case, which consist of mediation fees, filing fees, printing and copying costs and related matter. *See Appendix 3*, Owens Decl. at ¶ 20; *Appendix 4*, Giardina Decl. at ¶ 32.

---

[10] *See Checking Account Overdraft Litig.* 830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011) ("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152- Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).").

The requested fee and expense amount is reasonable given the substantial monetary recovery alone, but the reasonableness of the request is further enhanced by the non-monetary benefits this case conferred upon the class. *See Faught*, 668 F.3d at 1244-45 (finding fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class."). Specifically, in direct response to this lawsuit, Defendant reprogrammed its retail point-of-sale system to stop printing anything more than the last five digits of the card number or the expiration date of the credit card or debit card on transaction receipts. *See Martin v. Glob. Mktg. Research Services, Inc.*, 614CV1290ORL31KRS, 2016 WL 6996118, at *3 (M.D. Fla. Nov. 30, 2016) (noting the non-economic benefits to the class in a consumer class action where the suit was "instrumental" in causing the defendant to changes its business practices to comply with the law"); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (noting the significant non-monetary benefits to class members in a consumer class action, which required important changes to the operating procedures of the defendant, and which will aid and benefit class members in their future dealings with the defendant); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (rejecting an objection by objector that the requested fee was too large where the objector improperly limited the monetary value of the settlement and disregarded the settlement's substantial non-monetary benefits, which the objector wrongly claimed were illusory). The class also received the additional benefit of being notified of the disclosure of their private financial information, and the benefit of being able to patronize Defendant's store again knowing that the FACTA violations at issue have stopped. *See Appendix 5*, Siciliano Decl. at ¶¶ 7-10, 23.

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 and there was nonmonetary relief. *Poertner*, 618 F. App'x at 631. The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends *Camden I's* percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *Newberg on Class Actions* § 13:7.

*Id.* at 628 fn. 2. The Eleventh's Circuit's decision in *Poertner* is in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court rejected the notion that the fee award should be limited to the amount of funds claimed by the class members.[11] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting."

---

[11] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

*Id.* at 480-81. Courts within this circuit have echoed this principle. *Hamilton*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762, at *19 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims."); *see also Montoya v. PNC Bank, N.A.*, No. 14-20474 2016 WL 1529902, at *23 (S.D. Fla. Apr. 14, 2016) ("[T]he valuation of counsel's fee should be based on the opportunity created for the Settlement Class . . . [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement.").

In another case arising under FACTA, *Legg v. E-Z Rent A Car, Inc.*, 14-CV-1716-ORL-40DAB (M.D. Fla. 2014), the court granted final approval to a class action settlement that provided for an award of fees and costs to class counsel in the amount of $475,000, where the settlement agreement required the defendant to establish a settlement fund consisting of $6,011,636 in credit redeemable at one of the defendant's rental locations – there was no cash component unlike the matter at bar. *Legg v. E-Z Rent A Car, Inc.*, 14-CV-1716-ORL-40DAB, 2015 WL 12839191 (M.D. Fla. Sept. 25, 2015). Additionally, *Legg* settled quickly, after an unopposed motion to transfer venue—a fact that further demonstrates the reasonableness of the fees sought in this matter, which included significant post-settlement motion practice directed to identifying class members, **subpoenas to 28 separate card-issuing banks**, and the review of the extensive resulting document production. Here, in addition to providing the non-monetary benefits to class members which includes forcing Defendant to change its business practices, providing notice of the disclosure of private financial information, and allowing class members to continue patronizing Defendant's stores—the settlement also provides an immediate monetary benefit to class members which can be spent as class members see fit,

and wherever they choose. Accordingly, the settlement agreement here compares favorably with *Legg*, and further demonstrates the reasonableness of the mediated fee agreement in this case.

Similarly, in another consumer class action in this district, *Townsend v. Princeton Review*, the court relied on the non-monetary common benefit to the class members in granting final approval of a settlement where the settlement benefit was comprised of identity theft and protection services, and $320,00 in attorneys' fees paid to class counsel. 8:08-CV-1879-T33AEP, 2009 WL 10708315 (M.D. Fla. Dec. 2, 2009) Here, as in *Townsend*, there is significant value to the non-monetary benefits made available to the class, as well as an additional component not present in *Townsend*—immediate cash payments to all class members who submit a claim. Thus, the settlement agreement here compares favorably with *Townsend*, in that the settlement here provides significant and valuable non-monetary benefits to the class in addition to direct cash payments.

Further, consumer class actions have the additional benefit of acting as a deterrent to unlawful behavior, particularly where the individual injuries are potentially too small to justify the time and expense of litigation. *Gascho*, 822 F.3d at 287. Attorneys must be adequately compensated to further encourage the positive societal effects such lawsuits bring.[12]

---

[12] *See Gascho*, 822 F.3d at 287 n. 7 (citing Brian T. Fitzpatrick, Do Class Action Lawyers Make Too Little?, 158 U. Pa. L.Rev.2043, 2047 (2010) (concluding that courts "should not be concerned about compensating class members in small-stakes class actions and, instead, should be concerned only with fully incentivizing class action lawyers to bring as many cost-justified actions as possible" because "the only function they serve is deterrence"); *Gascho*, 822 F.3d at 287 n. 7 (citing Hailyn Chen, Comment, Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions, 50 UCLA L.Rev. 879, 892 (2003) (arguing that courts should not limit attorney's fees to a percentage of actual claims because doing so will

Finally, and perhaps most significantly, not a single class member has objected to counsel's fee and expense request. As a percentage of the settlement, the fees and expenses sought are reasonable. *See Appendix 6*, Caldevilla Decl. at ¶¶ 4-9; *Appendix 7*, Rothburd Decl. at ¶¶ 4-10.

**B. The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I* Factors.**

In cases in which the fees sought exceed 25% of the settlement, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of fee request. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The *Johnson/Camden I* factors are (1) the time and labor required;[13] (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. Class counsel are experienced class action litigators with excellent reputations, who expended hundreds of hours on the instant case, worked on a purely contingent basis, and produced an excellent outcome for the class. *Appendix 3*, Owens Decl., ¶¶ 4-8, 11, 16-19; *Appendix 4*, Giardina Decl. at ¶¶ 10-20, 26-29.

---

often "result in a fee that is so small as to prevent class action attorneys from pursuing such cases, which serve primarily a regulatory and deterrent function")).

[13] The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... "[and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re CP Ships Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

These factors confirm the reasonableness of counsels' fee and expense request. *See Appendix 6*, Caldevilla Decl. at ¶¶ 4-9; *Appendix 7*, Rothburd Decl. at ¶¶ 4-10.

1. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are interrelated inquires and each support the reasonableness of the request. This case has been pending since December 19, 2018 and Class Counsel had to engage in substantial litigation against a well-heeled defendant and sophisticated defense counsel to reach the Settlement.

The work was extensive. As noted above, counsel conducted written discovery, non-party discovery, and considerable motion practice. In order to identify potential class members, Class Counsel **issued subpoenas to twenty-eight (28) different card issuing-banks**, and when met with resistance by a card-issuing bank, engaged in motion practice to secure the information necessary to apprise the affected consumers of the existence of this lawsuit and their ability to claim their share of the resulting benefits. Indeed, in one such instance, Plaintiff's counsel exchanged over 100 emails with counsel for Bank of America (in addition to motion practice) in order to secure the information needed to identity and notify class members. All of the work necessitated by this case diverted the time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (finding the expenditure of significant time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) ( "[T]he *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.").

Finally, and perhaps most tellingly, no class member objected to class counsel's effort or the proposed fee and expense award, even though the notice explicitly told the class of both the percentage and the fee amount sought. The lack of objections together with the 748 persons who submitted a claim, support approval of the settlement. *See, e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (affirming final approval where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013), aff'd as modified, 799 F.3d 701 (7th Cir. 2015) (the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

2.  <u>The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.</u>

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested cost and fee award.

This case is novel on several levels. First, it is an open issue as to what evidence it takes to prove that Defendant "willfully" violated the law. In addition, assuming that Plaintiff prevailed and proved a "willful" violation, the resulting damage award is also a novel issue. Also, as noted above, at least some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g.*, *Aliano*, 2011 U.S. Dist. LEXIS 48323, at *13 ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in

nature.").[14]

In addition, the ability to recover fees and expenses here has always been contingent on a successful outcome. Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364 (quoting *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335). Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618, at *35 (S.D. Fla. Jan. 30, 2007) (citing *Pinto*, 513 F. Supp.2d at 1339).

The case's novelty and contingent nature also demonstrate its undesirability. Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to advance substantial out-of-pocket expenses and risk getting nothing, especially when the prior class settlements under FACTA provided very little incentive to take these cases.

---

[14] *But see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Although Class Counsel achieved a favorable result, that was anything but certain when they took the case. Thus, these factors all weigh in favor of approving the fee and expense amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.") (citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

3. <u>Class Counsel Achieved an Excellent Result for the Settlement Class.</u>

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the parties' mediated Agreement provides a Settlement Fund of $1,274,562.00, and the class has approximately 22,065 members. Once again, each class member who submits a valid claim will receive up to $18.00 which, as noted above, is far greater than the recoveries in other FACTA settlements that were granted final approval.

The Agreement calls for the distribution of the entire net settlement fund to the Settlement Class Members on a pro rata basis in an amount of up to $18.00 for each class member that submits a valid claim, but the amounts of any checks returned as undeliverable or that remain uncashed after 90 days from the date on the check may be used to reimburse Defendant for any payments made for notice and administration costs. *Appendix 1* at § III.B.i. In this case, there are prominent factors that support the parties' agreement that Defendant should retain all unclaimed funds. First, Defendant is not in the business of selling retail goods. Defendant's

stores (where the violative receipts were printed), similar to Salvation Army or Habitat for Humanity, accept tax deductible donations of new and used items for resale. All proceeds of this not-for-profit organization support Chapters' hospice programs. The direct benefit Defendant's work confers on those in need arguably provides an equal if not greater public benefit than any traditional *cy pres* recipient. *See Poertner*, 618 Fed.Appx. at 626 (noting that it is appropriate to consider the charitable donation in evaluating the settlement overall because it indirectly benefits the class).

Additionally, Defendant has agreed to change its business practices with respect to the provision of credit and debit card transaction receipts to its customers. *Appendix 1* at§ III.F. This is a benefit to consumers in general, as it results in one less business engaging in practices which could harm consumers, and it is also a benefit to class members and customers of Defendant who may now continue to patronize Defendant's business without the fear of having their private financial information compromised. *See Appendix 5*, Siciliano Decl. at ¶ 8.

Therefore, the proposed Settlement represents a significant recovery, both in terms of the settlement fund and the anticipated recovery per class member, consumers and future patrons of Defendant's business, and for those struggling with end-of-life needs. This factor thus weighs strongly in favor of approving the fee and expense amount.

4.   The Requested Fee is Consistent with Other Consumer Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases supports approval. There are plenty consumer class actions, including a recent FACTA case in this circuit, that awarded one third of the settlement amount for fees, and most were more desirable than this case because the plaintiffs did not have to prove willfulness to recover.

*See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *De Los Santos v. Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (awarding one-third of gross recovery for attorneys' fees); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-01317- PAS, Dkt. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding "33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award"); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-cv- 02152-ASG, Dkt. 626 at 7 (S.D. Fla. May 30, 2003) (approving fees of one-third of gross amount of the settlement fund, plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 13-cv-21016, Dkt. 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Accordingly, this factor also favors the proposed fee and expense award.

5.  This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable. As shown, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits on the class despite hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F.Supp.2d at 1334 ("In assessing the quality of

representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.").

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity. Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 3*, Owens Decl. at ¶¶ 12-13; *Appendix 4*, Giardina Decl. at ¶¶ 6-9. Thus, the *Johnson/Camden I* factors confirm the mediated attorneys' fee and expense award is reasonable. *See also Appendix 6*, Caldevilla Decl. at ¶¶ 4-9; *Appendix 7*, Rothburd Decl. at ¶¶ 4-10. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

6. <u>Although Not Required, a Lodestar Cross Check Confirms the Fee Request is Reasonable.</u>

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of the fee sought. *See Waters*, 190 F.3d at 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). However, a court should not utilize a lodestar crosscheck "as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1336.

Here, a lodestar crosscheck confirms that the fee requested by Class Counsel is reasonable. To date, Class Counsel have spent more than 600 hours on this case.[15] *See Appendix 3*, Owens

---

[15] Courts have allowed attorneys to demonstrate the hours expended on a matter and the reasonable rate for those hours with a declaration. *See Rigney v. Livingston Fin., LLC*, 612CV617ORL37TBS, 2014 WL 12625790, at *9 (M.D. Fla. Mar. 6, 2014), *report and*

Decl. at ¶ 16; *Appendix 4*, Giardina Decl. at ¶ 29. A reasonable hourly rate for Class Counsel in this matter is between $400 - $500 per hour. *See Appendix 6*, Caldevilla Decl. at ¶ 9; *Appendix 7*, Rothburd Decl. at ¶ 10. Accordingly, the lodestar is at least $240,000 at the low end.

After determining the lodestar, a court may calculate a multiplier to be applied to the lodestar. *Behrens*, 118 F.R.D. at 546. Among the factors to be considered when calculating the multiplier, are whether the representation was provided on a contingent basis, the results obtained, and likelihood of success. *Id.* at 547. A contingency fee arrangement often justifies an increase in the award of attorneys' fees. *See Jones v. Central Soya Co., Inc.*, 748 F.2d 586, 591 (11th Cir.1986). Such an incentive helps assure that contingency arrangements endure, because without them, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens*, 118 F.R.D. at 548. Together, these factors counsel in favor of a multiplier of 2.5, which is consistent with the multipliers utilized in cases with circumstances similar to those in the present. *See Appendix 6*, Caldevilla Decl. at ¶ 9; *Appendix 7*, Rothburd Decl. at ¶ 10.

Here, Plaintiff is seeking an attorney fee award of $424,854, which represents one third of the common fund and is less than the lodestar amount applying a multiplier of 2.5. Given the circumstances of this case, a multiplier of 2.5 is appropriate and compares favorably with other class actions. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y.

---

*recommendation adopted*, 612CV617ORL37TBS, 2014 WL 12633494 (M.D. Fla. Mar. 13, 2014) (approving fee requested in class action settlement where rate and hours expended were supported by declaration from class counsel).

1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (noting that a lodestar multiple of 2.26 "appears to be at the lower end of the range of multiples used in other cases"); *Martin v. Glob. Mktg. Research Services, Inc.*, 614CV1290ORL31KRS, 2016 WL 6996118, at *2 (M.D. Fla. Nov. 30, 2016) (noting that "[a] multiplier of 2–3 times lodestar to compensate for contingency risk is typical in common fund cases") (citing *Ressler v. Jacobson*, 149 F.R.D. 651, 654 n.4 (M.D. Fla. 1992)); *Bodnar v. Bank of Am., N.A.*, CV 14-3224, 2016 WL 4582084, at *6 (E.D. Pa. Aug. 4, 2016) (approving a fee award with a multiplier of 4.69 in a consumer class action); *see also Appendix 6*, Caldevilla Decl. at ¶ 9; *Appendix 7*, Rothburd Decl. at ¶ 10. Thus, the lodestar crosscheck, although not required, confirms that the one third percentage fee award Plaintiff seeks is reasonable. *See also Appendix 6*, Caldevilla Decl. at ¶ 9; *Appendix 7*, Rothburd Decl. at ¶ 10. Additionally, the requested fee satisfies the *Johnson* factors. Accordingly, the Court should approve the fee and expense request and grant final approval to the settlement.

**C.  The Requested Incentive Payment is Reasonable.**

Plaintiff has requested an incentive payment of $10,000.00 for his service to the class in addition to any recovery that he is entitled to as a Settlement Class Member. This is well within the range of reasonableness. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, at *25-26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive award each to two sets of plaintiffs) (citing *Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff)); *see also Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB,

Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award).[16]

## VII.   CONCLUSION

This Agreement provides substantial and immediate cash benefits and non-monetary benefits for the Class, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, it satisfies each of the six *Bennett* factors, and Class Counsel's fee and expense request is both a reasonable percentage of the Settlement, and it satisfies the *Johnson/Camden I* factors. The settlement, Class Counsel's fee and expense request, and the requested incentive payment are all fair, reasonable and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting them final approval. A draft Final Approval Order will be filed before the Final Approval Hearing.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order granting final approval of the class actions settlement, and awarding Plaintiff attorneys' fees, expenses, and a service award as set forth herein.

### Certification of Compliance with Local Rule 3.01(g)

Pursuant to M.D. Fla. Local Rule 3.01(g), undersigned counsel has conferred with counsel for Defendant regarding this motion and said counsel has advised that Defendant takes no position as to the relief requested in this motion.

---

[16] The Seventh Circuit was recently critical of a $7,500 incentive award as being too small. *Ira Holtzman, C.P.A, & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014) (describing the award as a "disincentive" award); *see also* Conte and Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.) Indeed, "[S]ince without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *Matter of Continental Ill. Sec. Litigation*, 962 F.2d 566, 571 (7th Cir. 1992)

Dated: July 14, 2020

Respectfully submitted,

s/ *Scott D. Owens*
Scott D. Owens, Esq.
Scott D. Owens, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

James. S. Giardina, Esq.
The Consumer Rights Law Group, PLLC
3104 W. Waters Ave., Ste. 200
Tampa, FL 33614
Tel: 813-435-5055
Fax: 866-535-7199
james@consumerrightslawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2020, I electronically filed the foregoing document with the Clerk of this Court using the CM/ECF. I also certify that the foregoing document is being served this date via US mail and/or some other authorized manner for those counsel or parties on the service list below, if any, who are not authorized to received electronically Notices of Electronic Filing.

By: s/ *Scott D. Owens*
Scott D. Owens, Esq.